UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| CHERYL MARDO | : | |
| | : | |
| v. | : | C.A. No. 07-281ML |
| | : | |
| MICHAEL J. ASTRUE, Commissioner | : | |
| Social Security Administration | : | |

**REPORT AND RECOMMENDATION**

Lincoln D. Almond, United States Magistrate Judge

This matter is before the Court for judicial review of a final decision of the Commissioner of the Social Security Administration ("Commissioner") denying Disability Insurance Benefits ("DIB") under the Social Security Act (the "Act"), 42 U.S.C. § 405(g). Plaintiff filed her Complaint on July 25, 2007 seeking to reverse the decision of the Commissioner. On November 30, 2007, Plaintiff filed a Motion to Reverse Without a Remand for a Rehearing or, Alternatively, with a Remand for a Rehearing the Commissioner's Final Decision. (Document No. 6). On February 11, 2008, the Commissioner filed a Motion for an Order Affirming the Decision of the Commissioner. (Document No. 9). A reply was filed on March 10, 2008. (Document No. 12).

This matter has been referred to me for preliminary review, findings and recommended disposition. 28 U.S.C. § 636(b)(1)(B); LR Cv 72. Based upon my review of the record and the legal memoranda filed by the parties, I find that there is not substantial evidence in this record to support the Commissioner's decision and findings that the Plaintiff is not disabled within the

meaning of the Act. Consequently, I recommend that the Commissioner's Motion for an Order Affirming the Decision of the Commissioner (Document No. 9) be DENIED and that Plaintiff's Motion to Reverse Without a Remand for a Rehearing or, Alternatively, with a Remand for a Rehearing the Commissioner's Final Decision (Document No. 6) be GRANTED.

## I. PROCEDURAL HISTORY

Plaintiff filed an application for DIB on April 2, 2003, alleging disability as of June 1, 1998. (Tr. 83-85). Plaintiff's claim was denied initially (Tr. 31-33) on August 14, 2003 and on reconsideration (Tr. 35-37) on November 24, 2003. Plaintiff requested an administrative hearing. An initial hearing was held on February 22, 2005, (Tr. 447-458), with subsequent hearings held on May 10, 2005 (Tr. 459-477), July 13, 2005 (Tr. 478-497) and August 15, 2005 (Tr. 498-540) at which time, Plaintiff, represented by an attorney, her husband, a medical expert ("ME") and a vocational expert ("VE") appeared and testified. Administrative Law Judge Martha H. Bower ("ALJ") issued a decision on October 25, 2005 finding that Plaintiff was not disabled during the period at issue. (Tr. 17-28). Plaintiff filed a Request for Review on November 3, 2005. (Tr. 16). The Appeals Council denied Plaintiff's request for review on May 30, 2007, (Tr. 7-10), making the ALJ's decision the final decision of the Commission. A timely appeal was then filed with this Court.

## II. THE PARTIES' POSITIONS

Plaintiff argues that the substantial evidence does not support the ALJ's finding that carpal tunnel syndrome was not a medically determinable impairment prior to Plaintiff's date last insured. Plaintiff also argues that the ALJ failed to ask the VE if his testimony was

consistent with the Dictionary of Occupational Titles ("DOT"), that the ALJ failed to properly follow the "treating physician rule" and that substantial evidence does not support the ALJ's evaluation of Plaintiff's activities of daily living. Finally, Plaintiff argues that the ALJ erroneously failed to consult a psychiatric or psychological medical expert to make a determination as to the onset of Plaintiff's depression and anxiety.

The Commissioner disputes Plaintiff's claims and argues that there is substantial evidence in the record to support the ALJ's finding that Plaintiff was not disabled during the relevant time period.

**III. THE STANDARD OF REVIEW**

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. Ortiz v. Sec'y of Health and Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (per curiam); Rodriguez v. Sec'y of Health and Human Servs., 647 F.2d 218, 222 (1st Cir. 1981).

Where the Commissioner's decision is supported by substantial evidence, the court must affirm, even if the court would have reached a contrary result as finder of fact. Rodriguez Pagan v. Sec'y of Health and Human Servs., 819 F.2d 1, 3 (1st Cir. 1987); Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991). The court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. Frustaglia v. Sec'y of Health and Human Servs., 829 F.2d 192, 195 (1st Cir. 1987); Parker v. Bowen, 793 F.2d 1177 (11th Cir.

1986) (court also must consider evidence detracting from evidence on which Commissioner relied).

The court must reverse the ALJ's decision on plenary review, however, if the ALJ applies incorrect law, or if the ALJ fails to provide the court with sufficient reasoning to determine that he or she properly applied the law. Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999) (per curiam); accord Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991). Remand is unnecessary where all of the essential evidence was before the Appeals Council when it denied review, and the evidence establishes without any doubt that the claimant was disabled. Seavey v. Barnhart, 276 F.3d 1, 11 (1st Cir. 2001) citing, Mowery v. Heckler, 771 F.2d 966, 973 (6th Cir. 1985).

The court may remand a case to the Commissioner for a rehearing under sentence four of 42 U.S.C. § 405(g); under sentence six of 42 U.S.C. § 405(g); or under both sentences. Seavey, 276 F.3d at 8. To remand under sentence four, the court must either find that the Commissioner's decision is not supported by substantial evidence, or that the Commissioner incorrectly applied the law relevant to the disability claim. Id.; accord Brenem v. Harris, 621 F.2d 688, 690 (5th Cir. 1980) (remand appropriate where record was insufficient to affirm, but also was insufficient for district court to find claimant disabled).

Where the court cannot discern the basis for the Commissioner's decision, a sentence-four remand may be appropriate to allow her to explain the basis for her decision. Freeman v. Barnhart, 274 F.3d 606, 609-610 (1st Cir. 2001). On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence. Diorio v. Heckler,

721 F.2d 726, 729 (11th Cir. 1983) (necessary for ALJ on remand to consider psychiatric report tendered to Appeals Council). After a sentence four remand, the court enters a final and appealable judgment immediately, and thus loses jurisdiction. Freeman, 274 F.3d at 610.

In contrast, sentence six of 42 U.S.C. § 405(g) provides:

> The court...may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding;

42 U.S.C. § 405(g). To remand under sentence six, the claimant must establish: (1) that there is new, non-cumulative evidence; (2) that the evidence is material, relevant and probative so that there is a reasonable possibility that it would change the administrative result; and (3) there is good cause for failure to submit the evidence at the administrative level. See Jackson v. Chater, 99 F.3d 1086, 1090-1092 (11th Cir. 1996).

A sentence six remand may be warranted, even in the absence of an error by the Commissioner, if new, material evidence becomes available to the claimant. Id. With a sentence six remand, the parties must return to the court after remand to file modified findings of fact. Id. The court retains jurisdiction pending remand, and does not enter a final judgment until after the completion of remand proceedings. Id.

**IV. THE LAW**

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than

twelve months. 42 U.S.C. §§ 416(i), 423(d)(1); 20 C.F.R. § 404.1505. The impairment must be severe, making the claimant unable to do her previous work, or any other substantial gainful activity which exists in the national economy. 42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-404.1511.

**A. Treating Physicians**

Substantial weight should be given to the opinion, diagnosis and medical evidence of a treating physician unless there is good cause to do otherwise. See Rohrberg v. Apfel, 26 F. Supp. 2d 303, 311 (D. Mass. 1998); 20 C.F.R. § 404.1527(d). If a treating physician's opinion on the nature and severity of a claimant's impairments, is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight. 20 C.F.R. § 404.1527(d)(2). The ALJ may discount a treating physician's opinion or report regarding an inability to work if it is unsupported by objective medical evidence or is wholly conclusory. See Keating v. Sec'y of Health and Human Servs., 848 F.2d 271, 275-276 (1st Cir. 1988).

Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. See Wheeler v. Heckler, 784 F.2d 1073, 1075 (11th Cir. 1986). When a treating physician's opinion does not warrant controlling weight, the ALJ must nevertheless weigh the medical opinion based on the (1) length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) the medical evidence supporting the opinion; (4) consistency with the record as a whole; (5)

specialization in the medical conditions at issue; and (6) other factors which tend to support or contradict the opinion. 20 C.F.R § 404.1527(d). However, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion. See 20 C.F.R. § 404.1527(d)(2).

The ALJ is required to review all of the medical findings and other evidence that support a medical source's statement that a claimant is disabled. However, the ALJ is responsible for making the ultimate determination about whether a claimant meets the statutory definition of disability. 20 C.F.R. § 404.1527(e). The ALJ is not required to give any special significance to the status of a physician as treating or non-treating in weighing an opinion on whether the claimant meets a listed impairment, a claimant's residual functional capacity (see 20 C.F.R. §§ 404.1545 and 404.1546), or the application of vocational factors because that ultimate determination is the province of the Commissioner. 20 C.F.R. § 404.1527(e). See also Dudley v. Sec'y of Health and Human Servs., 816 F.2d 792, 794 (1st Cir. 1987).

**B. Developing the Record**

The ALJ has a duty to fully and fairly develop the record. Heggarty v. Sullivan, 947 F.2d 990, 997 (1st Cir. 1991). The Commissioner also has a duty to notify a claimant of the statutory right to retained counsel at the social security hearing, and to solicit a knowing and voluntary waiver of that right if counsel is not retained. See 42 U.S.C. § 406; Evangelista v. Sec'y of Health and Human Servs., 826 F.2d 136, 142 (1st Cir. 1987). The obligation to fully and fairly develop the record exists if a claimant has waived the right to retained counsel, and even if the claimant is represented by counsel. Id. However, where an unrepresented claimant

has not waived the right to retained counsel, the ALJ's obligation to develop a full and fair record rises to a special duty. See Heggarty, 947 F.2d at 997, citing Currier v. Sec'y of Health Educ. and Welfare, 612 F.2d 594, 598 (1st Cir. 1980).

**C. Medical Tests and Examinations**

The ALJ is required to order additional medical tests and exams only when a claimant's medical sources do not give sufficient medical evidence about an impairment to determine whether the claimant is disabled. 20 C.F.R. § 416.917; see also Conley v. Bowen, 781 F.2d 143, 146 (8th Cir. 1986). In fulfilling his duty to conduct a full and fair inquiry, the ALJ is not required to order a consultative examination unless the record establishes that such an examination is necessary to enable the ALJ to render an informed decision. Carrillo Marin v. Sec'y of Health and Human Servs., 758 F.2d 14, 17 (1st Cir. 1985).

**D. The Five-step Evaluation**

The ALJ must follow five steps in evaluating a claim of disability. See 20 C.F.R. §§ 404.1520, 416.920. First, if a claimant is working at a substantial gainful activity, she is not disabled. 20 C.F.R. § 404.1520(b). Second, if a claimant does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled. 20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled. 20 C.F.R. § 404.1520(d). Fourth, if a claimant's impairments do not prevent her from doing past relevant work, she is not disabled. 20 C.F.R. § 404.1520(e). Fifth, if a claimant's impairments (considering her residual functional

capacity, age, education, and past work) prevent her from doing other work that exists in the national economy, then she is disabled. 20 C.F.R. § 404.1520(f). Significantly, the claimant bears the burden of proof at steps one through four, but the Commissioner bears the burden at step five. Wells v. Barnhart, 267 F. Supp. 2d 138, 144 (D. Mass. 2003) (five-step process applies to both SSDI and SSI claims).

In determining whether a claimant's physical and mental impairments are sufficiently severe, the ALJ must consider the combined effect of all of the claimant's impairments, and must consider any medically severe combination of impairments throughout the disability determination process. 42 U.S.C. § 423(d)(2)(B). Accordingly, the ALJ must make specific and well-articulated findings as to the effect of a combination of impairments when determining whether an individual is disabled. Davis v. Shalala, 985 F.2d 528, 534 (11th Cir. 1993).

The claimant bears the ultimate burden of proving the existence of a disability as defined by the Social Security Act. Seavey, 276 F.3d at 5. The claimant must prove disability on or before the last day of her insured status for the purposes of disability benefits. Deblois v. Sec'y of Health and Human Servs., 686 F.2d 76 (1st Cir. 1982), 42 U.S.C. §§ 416(i)(3), 423(a), (c). If a claimant becomes disabled after she has lost insured status, her claim for disability benefits must be denied despite her disability. Id.

**E. Other Work**

Once the ALJ finds that a claimant cannot return to her prior work, the burden of proof shifts to the Commissioner to establish that the claimant could perform other work that exists in the national economy. Seavey, 276 F.3d at 5. In determining whether the Commissioner has

met this burden, the ALJ must develop a full record regarding the vocational opportunities available to a claimant. Allen v. Sullivan, 880 F.2d 1200, 1201 (11th Cir. 1989). This burden may sometimes be met through exclusive reliance on the Medical-Vocational Guidelines (the "grids"). Seavey, 276 F.3d at 5. Exclusive reliance on the "grids" is appropriate where the claimant suffers primarily from an exertional impairment, without significant non-exertional factors. Id.; see also Heckler v. Campbell, 461 U.S. 458, 103 S. Ct. 1952, 76 L.Ed.2d 66 (1983) (exclusive reliance on the grids is appropriate in cases involving only exertional impairments, impairments which place limits on an individual's ability to meet job strength requirements).

Exclusive reliance is not appropriate when a claimant is unable to perform a full range of work at a given residual functional level or when a claimant has a non-exertional impairment that significantly limits basic work skills. Nguyen, 172 F.3d at 36. In almost all of such cases, the Commissioner's burden can be met only through the use of a vocational expert. Heggarty, 947 F.2d at 996. It is only when the claimant can clearly do unlimited types of work at a given residual functional level that it is unnecessary to call a vocational expert to establish whether the claimant can perform work which exists in the national economy. See Ferguson v. Schweiker, 641 F.2d 243, 248 (5th Cir. 1981). In any event, the ALJ must make a specific finding as to whether the non-exertional limitations are severe enough to preclude a wide range of employment at the given work capacity level indicated by the exertional limitations.

**1. Pain**

"Pain can constitute a significant non-exertional impairment." Nguyen, 172 F.3d at 36. Congress has determined that a claimant will not be considered disabled unless he furnishes

medical and other evidence (e.g., medical signs and laboratory findings) showing the existence of a medical impairment which could reasonably be expected to produce the pain or symptoms alleged. 42 U.S.C. § 423(d)(5)(A). The ALJ must consider all of a claimant's statements about his symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence. 20 C.F.R. § 404.1528. In determining whether the medical signs and laboratory findings show medical impairments which reasonably could be expected to produce the pain alleged, the ALJ must apply the First Circuit's six-part pain analysis and consider the following factors:

(1) The nature, location, onset, duration, frequency, radiation, and intensity of any pain;

(2) Precipitating and aggravating factors (e.g., movement, activity, environmental conditions);

(3) Type, dosage, effectiveness, and adverse side-effects of any pain medication;

(4) Treatment, other than medication, for relief of pain;

(5) Functional restrictions; and

(6) The claimant's daily activities.

Avery v. Sec'y of Health and Human Servs., 797 F.2d 19, 29 (1st Cir. 1986). An individual's statement as to pain is not, by itself, conclusive of disability. 42 U.S.C. § 423(d)(5)(A).

**2. Credibility**

Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding. Rohrberg, 26 F. Supp. 2d at 309. A reviewing court will not disturb a clearly

articulated credibility finding with substantial supporting evidence in the record. See Frustaglia, 829 F.2d at 195. The failure to articulate the reasons for discrediting subjective pain testimony requires that the testimony be accepted as true. See DaRosa v. Sec'y of Health and Human Servs., 803 F.2d 24 (1st Cir. 1986).

A lack of a sufficiently explicit credibility finding becomes a ground for remand when credibility is critical to the outcome of the case. See Smallwood v. Schweiker, 681 F.2d 1349, 1352 (11th Cir. 1982). If proof of disability is based on subjective evidence and a credibility determination is, therefore, critical to the decision, "the ALJ must either explicitly discredit such testimony or the implication must be so clear as to amount to a specific credibility finding." Foote v. Chater, 67 F.3d 1553, 1562 (11th Cir. 1995) (quoting Tieniber v. Heckler, 720 F.2d 1251, 1255 (11th Cir. 1983)).

## V. APPLICATION AND ANALYSIS

Plaintiff was forty-nine years old on the date of the ALJ's decision, (Tr. 29), and is a high school graduate with an Associates Degree. (Tr. 98, 194). Plaintiff's relevant vocational history includes work as a phlebotomist and medical receptionist/assistant. (Tr. 93, 106-113, 464). Plaintiff alleges disability due to spinal stenosis, arthritis of the spine, status-post back surgery, high blood pressure, hiatal hernia, depression, post-tramatic stress disorder and sciatica. (Tr. 92).

Plaintiff was treated by Dr. Andra K. Cyronak, a primary care physician, from 1998 to 2002. See Ex. 27F. On September 18, 1998, Plaintiff was referred to counseling for an adjustment disorder and excused from work for six weeks. (Tr. 393).[1] Dr. Cyronak saw Plaintiff

[1] In a Disability Report dated March 28, 2003 (Tr. 91-100), Plaintiff reported she stopped working as of June 1, 1998, because she "went overseas to adopt two babies." (Tr. 92).

for complaints of epigastric pain and neck and shoulder discomfort, as well as headaches, high blood pressure, heart palpitations and non-radiating lower back pain. (Tr. 394, 395, 398). By entry dated March 24, 1999, Dr. Cyronak noted that Elizabeth G. Heiss, Ph.D., Plaintiff's treating psychologist at Landmark Comprehensive Psychiatric Services, had approved Plaintiff's return to work. (Tr. 395). A cardiac ultrasound performed on November 11, 2000 was within normal limits. (Tr. 402).

Plaintiff was seen at the Landmark Medical Center in April 2002 for complaints of chronic back/hip pain (sciatica). (Tr. 130-135). Although straight leg raising on the left was positive for pain at 45 degrees, the extremities were described as non-tender with a full range of motion. (Tr. 134). Plaintiff was discharged in stable condition. Id. Magnetic Resonance Imaging ("MRI") of the lumbar spine on May 2, 2002, revealed Grade I anterolisthesis of L4 on L5 without L4 spondylolysis and a resulting moderate to severe degree of central stenosis. (Tr. 136-137). X-rays of the left hip on May 28, 2002 were unremarkable. (Tr. 138).

Plaintiff consulted with Dr. Randall L. Updegrove, of University Orthopedics for the time period from May 30, 2002 through August 20, 2002 (Tr. 178-183). He indicated that Plaintiff received, with limited improvement, epidural injections for mechanical low back pain with left leg radiculitis. (Tr. 178-179, 180-182). Due to the lack of significant improvement, Dr. Updegrove referred Plaintiff to Dr. Mark A. Palumbo. (Tr. 182). Plaintiff was seen by Dr. Palumbo on September 10, 2002, and he opined that she was suffering from L5 radiculopathy secondary to L4-L5 degenerative spinal stenosis and spondylolisthesis. (Tr. 162-165). Dr. Palumbo recommended that Plaintiff undergo posterior lumbar decompression and arthrodesis

with instrumentation. (Tr. 163). On September 24, 2002, Plaintiff elected to proceed with back surgery, (Tr. 171), and the procedure was performed on September 26, 2002. (Tr. 139-147).

Plaintiff's post-surgical course was essentially uneventful, her back pain was slowly resolving and a course of physical therapy was initiated. (Tr. 173). On November 6, 2002, Plaintiff was doing "quite well," and she was experiencing only "mild back pain." (Tr. 175). Plaintiff was fully ambulatory around her home and was able to take her children out for Halloween without difficulties. Id.

By February 5, 2003, approximately six months following her back surgery, Dr. Palumbo stated that Plaintiff was doing "extremely well" and that she was not using any pain medication. (Tr. 177). Plaintiff reported that she was fully active around her home, taking care of her two young children and performing all types of work at her house. Id. Plaintiff was experiencing no radicular leg pain or paresthesias, and, while she indicated she did have occasional discomfort in the left buttock with vigorous activities, she was not experiencing any weakness in the lower extremities. Id. Plaintiff's husband reported that she was able to do all types of housework and had actually been able to move some furniture. Id. At that point, Dr. Palumbo discharged Plaintiff, but encouraged her to maintain a low impact cardiovascular conditioning regiment and also advised her to continue her lumbar stabilization program on a long-term basis. Id.

On May 13, 2003, Dr. Richard Goulding, a non-examining medical consultant for the Rhode Island Disability Determination Services ("DSS"), reviewed the existing medical record and rendered an assessment of Plaintiff's functional abilities. (Tr. 186-193). Based upon the proffered reports, clinical findings and opinions, Dr. Goulding opined that Plaintiff retained a

capacity to lift and/or carry up to twenty pounds occasionally, and that she could lift and/or carry up to ten pounds frequently. (Tr. 187). Dr. Goulding further indicated that Plaintiff would be able to stand and/or walk for about six hours per eight-hour workday, and that she would be able to sit, with normal breaks, for about six hours in an eight-hour workday. Id. She also remained capable of unlimited pushing and pulling with both her upper and lower extremities. Id. Although Dr. Goulding found no evidence of manipulative, visual, communicative or environmental limitations, (Tr. 189-190), he did indicate that Plaintiff had postural limitations in that she would be able to climb, balance, stoop, kneel, crouch or crawl only occasionally. (Tr. 188).[2]

On May 14, 2003, Plaintiff was seen by her primary care physician, Dr. Yemeni, for a physical examination. (Tr. 289). Plaintiff reported that she was doing "very well" but was recently experiencing back pain radiating to both legs, as well as elbow pain secondary to tendinitis and foot pain. Id. Dr. Yemeni also noted Plaintiff's self report that she was "disabled." Id. However, following a complete physical, Dr. Yemeni stated that Plaintiff was "doing very well." Id. He advised Plaintiff to follow-up with Dr. Palumbo regarding her back discomfort and recommended physical therapy. Id. On May 28, 2003, Plaintiff was again seen by Dr. Palumbo for her complaints of lumbar discomfort with intermittent radiation into the buttock and posterior thigh. (Tr. 310). Dr. Palumbo noted that Plaintiff displayed a slightly antalgic gait and that sitting straight leg raising was mildly positive on the left side. Id. Lumbar examination did show moderate limitations of flexion and extension with some associated pain,

---

[2] On November 17, 2003, Dr. Nubar K. Astarjian, another DDS non-examining medical consultant, rendered an assessment of Plaintiff's functional abilities that was fully consistent with that by Dr. Goulding. (Tr. 236-243).

but there was no motor weakness and no sensory deficit evident. Id. Dr. Palumbo prescribed a mild analgesic and anti-inflammatory medication, as well as the initiation of a physical therapy program. Id. On July 9, 2003, Dr. Palumbo stated that Plaintiff reported moderate improvement with the physical therapy. (Tr. 311). On examination, her gait and standing posture were quite normal, and there was no motor weakness in the lower limbs. Id. He indicated that Plaintiff would be seen as circumstances required and that she would continue with physical therapy and should use over-the-counter, anti-inflammatory medication as necessary. Id.

On July 11, 2003, Plaintiff was seen by James P. Curran, Ph.D., Clinical Psychologist, for a mental status evaluation. (Tr. 194-197). Dr. Curran noted Plaintiff's statement that she suffered from depression and post traumatic stress disorder. (Tr. 194). Plaintiff presented as an appropriately groomed and dressed adult female of average height and who was somewhat overweight. Id. Gait, posture and motor behavior were reported as within normal limits, and Plaintiff was described as alert and responsive with good eye contact and rapport, as well as displaying normal facial expression. Id. Dr. Curran indicated that Plaintiff was quite talkative without any evidence of any articulation problem, she was calm, affect was appropriate and the psychologist was unable to detect any sign of a thought disorder. (Tr. 196). Dr. Curran offered a diagnostic impression of a generalized anxiety disorder and opined that Plaintiff's global assessment of functioning ("GAF") was 45 at that time. (Tr. 197). Dr. Curran expressed concern that Plaintiff was becoming more restrictive and agoraphobic and recommended that she receive treatment. Id. As for her ability to work, Dr. Curran indicated that she could certainly follow simple instructions and that she could get along with peers and supervisors. Id.

On August 7, 2003, Dr. Marsha Tracy, a non-examining DDS Psychiatrist, reviewed the evidence of record and proffered an opinion as the severity of Plaintiff's mental condition and as to her mental residual functional capacity ("RFC"). (Tr. 198-215). Based upon her review, Dr. Tracy indicated that Plaintiff had an anxiety disorder, not otherwise specified, that had more than a minimal impact upon her functional abilities but which was not of Listing severity. (Tr. 203). As to Plaintiff's mental RFC, Dr. Tracy indicated that Plaintiff's psychological state would impact, but not preclude, her ability to perform activities within a schedule, to maintain regular attendance and to be punctual within customary tolerances, as well as impacting, but not precluding, her ability to complete a normal workday. (Tr. 212-213). She stated that Plaintiff was not otherwise significantly limited by her anxiety disorder. (Tr. 212-215).[3]

Plaintiff was next seen by Dr. Yemeni on December 26, 2003. (Tr. 297). At that time, Plaintiff presented with complaints of neck and back pain, as well as complaints of numbness of both hands. Id. Dr. Yemeni reported that Plaintiff's hypertension and GERD were responsive to prescribed medication therapies, and once again instructed Plaintiff to contact Dr. Palumbo, as well as advising her to do exercises for her back. Id. Although Dr. Yemeni instructed Plaintiff to try wrist splints for "bilateral carpal tunnel syndrome," his notes do not set out any clinical findings and observations or any diagnostic procedures which would suggest that the syndrome was the actual source of Plaintiff's reported hand numbness. Id.

---

[3] On November 12, 2003, another DDS non-examining Psychiatrist, Dr. David Levoy, indicated that while he considered Plaintiff to be incapable of understanding, remembering and carrying out detailed instructions, (Tr. 231, 232), she was otherwise able to understand and remember simple tasks; to sustain concentration and persistence; to adequately socially interact and to adapt to routine stressors or changes. (Tr. 231-235).

On January 21, 2004, Plaintiff returned to University Orthopedics for evaluation of complaints of neck, thoracic and lumbar pain. (Tr. 312-313). Kerry Clark, RNPC, a Certified Registered Nurse Practitioner, noted Plaintiff's report of back pain and recent thoracic and neck pain as well as chronic occasional hand numbness. (Tr. 312). Ms. Clark indicated that on examination, Plaintiff displayed a normal gait and a well-maintained lumbar range of motion without any significant discomfort. Id. There was no pain with straight leg raising in the seated position and a bilateral full fluid range of motion of the hips was reported. Id. However, Ms. Clark indicated that Plaintiff did have some numbness of the right hand with Tinel's sign over the wrist and Phalen's test on the right. Id. Ms. Clark referred Plaintiff for formal physical therapy and opined that she was certainly capable of continued productive employment. (Tr. 312-313). Follow-up entries indicate that Plaintiff continued to experience diffuse musculoskeletal pain and occasional hand numbness. (Tr. 314-320).

Dr. Maurice Bermon, consulting Psychiatrist, prepared an evaluation of Plaintiff on December 23, 2004. (Tr. 272-275). Dr. Bermon noted Plaintiff's history of depression. (Tr. 272). Plaintiff presented as an appropriately dressed and groomed adult female; she was pleasant, spontaneous and interactive. (Tr. 274). Plaintiff's speech was at normal rate and rhythm and while mood was depressed, affect was full, and there was no evidence of any thought disorder. Id. Intellectual functioning was said to be grossly intact; insight and judgment were considered to be good and intelligence appeared to be at least average. Id. Dr. Bermon offered a diagnostic impression of dysthymia, major depressive disorder, mild to moderate, recurrent, and opined that Plaintiff's current GAF was about 65. Id. Also included in the record is a July

7, 2005, summary of the clinical notes by Dr. Heiss. (Tr. 338-339).[4] Dr. Heiss indicated that she has been following Plaintiff since September 1998, for mood instability and symptoms consistent with depression and that her clinical presentation has remained largely unchanged. (Tr. 338-339).

**A. The ALJ's Evaluation of Plaintiff's Carpal Tunnel Syndrome is not Supported by Substantial Evidence**

At Step 2, the ALJ concluded that Plaintiff had carpal tunnel syndrome ("CTS") and that such impairment was "severe" as defined in 20 C.F.R. § 404.1520(c). (Tr. 22). However, the ALJ found that Plaintiff's CTS developed after her date last insured, i.e., March 31, 2004, and was not a medically determinable impairment during the relevant period. (Tr. 23).

Under 20 C.F.R. § 404.1508, a physical impairment must be "established by medical evidence consisting of signs, symptoms, and laboratory findings...." In other words, it must be medically determinable. The ALJ notes that Plaintiff was diagnosed with bilateral CTS on April 18, 2005 in connection with an EMG study performed by a neurologist. Ex. 19F. However, the ALJ assumes that Plaintiff's CTS "only recently developed" based on an erroneous interpretation of prior medical evidence in the record. The ALJ finds that the "prior treatment notes and examination observations document [Plaintiff's] complaints of pain and intermittent tingling, but only provide normal findings from all diagnostic studies and tests." (Tr. 23). In support, the ALJ refers generally to three exhibits (Exs. 4F, 5F and 27F) which total seventy-six pages but provides no pinpoint citation to these "normal" test results. The ALJ also notes that "wrist splits

[4] Treatment notes from Landmark Comprehensive Psychiatric Services had previously been submitted (Ex. 13F) but as acknowledged by Attorney Brian Farrell before the ALJ, those notes were handwritten entries and, by and large, illegible. (Tr. 449-450, 471, 485). Accordingly, Dr. Heiss provided a typed summary. (Tr. 338-339).

were not prescribed until May of 2005, well after the date last insured." Id. This is not accurate, as a treatment note dated December 26, 2003 references bilateral CTS and that Plaintiff was advised to try "wrist splits" and "if she's not improve[d] in a couple of months she will be referred to hand surgeon." (Tr. 297). Further, records from University Orthopedics contain a reference to right hand numbness "with Tinel's over the wrist as well as with Phalen's test all on the right." (Tr. 312).[5]

The ME also testified as to Plaintiff's CTS. (Tr. 531). The ME was asked when Plaintiff's "hand problem" first arose and he identified the note of Plaintiff's treating physician from December 23, 2003 referenced above. Id. Although the ME states that the CTS became "more of an issue" in May of 2005 when the EMG was performed, the ALJ never follows up with the ME to seek his opinion as to whether Plaintiff's CTS was a medically determinable impairment prior to March 31, 2004. Moreover, the ALJ did not ask the ME about the positive Tinel's/Phalen's findings on January 21, 2004 (Tr. 312) and did not address that evidence at all in her decision. In his brief, the Commissioner mischaracterizes the testimony of the ME from the August 15, 2005 ALJ hearing. The Commissioner represents that the ME indicated "that the first indication of the condition as an issue was not until May of 2005." (Document No. 15 at 5). (emphasis added). That is not what the ME said – he testified that the condition was first "mentioned" in December 2003 and became "more of an issue" in May of 2005. (Tr. 531) (emphasis added). Unfortunately, the ME was not asked to opine on how much of an "issue" the CTS was prior to the date last insured.

---

[5] Tinel's and Phalen's are diagnostic tools for CTS.

The ALJ's findings as to Plaintiff's CTS are not fully supported by the record. Further, the ALJ did not fully develop the record when examining the ME regarding Plaintiff's CTS. These errors require remand for further administrative proceedings. Given this recommendation, it is not necessary to address Plaintiff's secondary arguments for remand.

**VI. CONCLUSION**

For the reasons stated above, I recommend that the Commissioner's Motion for an Order Affirming the Decision of the Commissioner (Document No. 9) be DENIED and that Plaintiff's Motion to Reverse Without a Remand for a Rehearing or, Alternatively, with a Remand for a Rehearing the Commissioner's Final Decision (Document No. 6) be GRANTED. I further recommend that Final Judgment enter in favor of Plaintiff remanding this matter for further administrative proceedings consistent with this decision.

Any objection to this Report and Recommendation must be specific and must be filed with the Clerk of the Court within ten (10) days of its receipt. See Fed. R. Civ. P. 72(b); LR Cv 72. Failure to file specific objections in a timely manner constitutes waiver of the right to review by the District Court and the right to appeal the District Court's decision. See United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).

/s/ Lincoln D. Almond
LINCOLN D. ALMOND
United States Magistrate Judge
June 16, 2008